IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


MICHAEL HARRISON,                     )
                          Petitioner  )
                                      )
        vs.                           ) Civil Action No. 09-574
                                      ) Magistrate Judge Robert C. Mitchell
SUPERINTENDENT OF SCI                 )
HUNTINGDON; ATTORNEY GENERAL          )
OF PENNSYLVANIA; DISTRICT             )
ATTORNEY OF ALLEGHENY COUNTY          )
                          Respondents )


**<u>MEMORANDUM OPINION AND ORDER</u>**

Michael Harrison ("Petitioner"), was convicted by a jury of his peers of first degree

murder in the shooting death of a member of a rival gang.  The shooting of the rival gang

member was apparently done in revenge for that rival gang's killing of a member of Petitioner's

gang. Petitioner was the driver of the vehicle which transported the two actual shooters, i.e.,

Kevin Lee and Isaac Butler.[1]  Petitioner now brings this federal habeas corpus petition pursuant

to 28 U.S.C. § 2254, seeking to attack that first degree murder conviction and imposed life

sentence at No. CC 19907837 in the Court of Common Pleas of Allegheny County,

Pennsylvania. This sentence was imposed on March 29, 2000.  Because he fails to show that the

State Courts' adjudication of his claims was contrary to or an unreasonable application of United

States Supreme Court precedent, the petition will be dismissed and because reasonable jurists

could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

---

[1]  "There [at Isaac Butler's house, Harrison], Lee and Butler discussed perpetrating a
retaliation shooting to avenge the death of Butler's brother, who had been killed in December,
1992, in a shooting by rival CRIP gang members."  ECF No. 19-7 at 1, Superior Court Opinion,
quoting trial court opinion, describing the situation.

Petitioner originally filed this habeas petition pro se, ECF No. 5, raising the following

issues:

> GROUND ONE: Trial court erred in allowing the preliminary hearing transcript
> of a Commonwealth witness to be read to the jury in violation of the
> Confrontation clause of the 6th amendment of the united [sic] States as well as the
> Penn. Const.

ECF No. 5 at 5.

> GROUND TWO: Trial court erred in failing to suppress Appellant's admission in
> violation of the Fifth and Sixth Amendments of the United States Constitution as
> well as Article 1, § 9 of the Pennsylvania Constitution.

ECF No. 5 at 6.

> GROUND THREE: The 6/6/98 audio-taped interview of co-defendant kenneth
> [sic] Lee by Pittsburgh Police officer George Ciganik and FBI agent Tom Carter
> in Santa Rosa, Ca[.] constitutes after discovered evidence that would have
> change[d] the outcome of appellant's trial.

ECF No. 5 at 8

> GROUND FOUR: Past counsel rendered prejudicially ineffectiveness assistance
> [sic] of counsel by failing to request a mistrial based upon Commonwealth's
> failure to present Kenneth Lee's testimony [as the District Attorney represented he
> would do in his opening remarks].

ECF No. 5 at 10.

> GROUND FIVE: Past counsel rendered prejudicially ineffective assistance by
> failing to properly object to or limit the inquiries of the Commonwealth regarding
> gang references.

ECF No. 5 at 11.

> GROUND SIX: Past counsel rendered prejudicially ineffective assistance of
> counsel by the following derelictions: failing to object to improper bolstering by
> prosecution in his questioning & closing statement: failing to object to the
> prosecutor's opening remarks asserting that appellant was guilty of 1st degree
> murder: failing to object to testimony regarding the murder weapon having been
> involved in another crime.

ECF No. 5 at 13.

> GROUND SEVEN: Past counsel rendered prejudicially ineffective assistance of counsel by failing to present available character testimony.

ECF No. 5 at 15.

Shortly after Petitioner filed his pro se habeas petition, he obtained private counsel who entered his appearance. ECF No. 6. After being granted five extensions of time in which to file an amended petition, counsel for Petitioner filed an amended petition. ECF No. 17, and a "brief"[2] in support thereof. ECF No. 18. In that amended habeas petition, counsel incorporated all of the issues that Petitioner raised in the original pro se petition, and then counsel raised the following three issues, the second two of which mirrored claims raised in the pro se petition:

> I. PETITIONER WAS DENIED HIS RIGHT TO PROCEED PRO SE WHEN THE SUPERIOR COURT OF PENNSYLVANIA FAILED TO CONSIDER HIS PRO SE BRIEF AND ONLY CONSIDERED THE BRIEF FILED BY DISCHARGED COUNSEL [during the PCRA appeal].

ECF 17 at 22.

> II. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS PETITIONER'S PRE-TRIAL STATEMENT WHERE THE SAME WAS MADE WITHOUT COUNSEL PRESENT AND WAS NOT VOLUNTARY IN NATURE BUT RATHER THE RESULT OF COERCIVE POLICE ACTIONS.

ECF No. 17 at 26.

> III. THE PCRA COURT AND PENNSYLVANIA SUPERIOR COURT ERRED IN HOLDING THAT THE JUNE 6, 1998 AUTO [sic, should be "audio"] TAPED INTERVIEW OF CO-DEFENDANT KENNETH LEE BY PITTSBURGH POLICE OFFICER GEORGE CIGANIK AND FBI AGENT TOM CARTER IN SANTA ROSA, CALIFORNIA DID NOT CONSTITUTE AFTER DISCOVERED EVIDENCE [that] DEPRIVED THE PETITIONER OF

---

[2] The "brief" was essentially a verbatim copy of the counseled amended habeas petition without the numbering of the paragraphs which was contained in the counseled amended habeas petition.

A MEANINGFUL EXERCISE OF HIS RIGHT TO CONFRONT WITNESSES
AGAINST HIM IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO
CONFRONTATION AND HIS FIFTH AND FOURTEENTH AMENDMENT
RIGHTS TO DUE PROCESS.

ECF No. 17 at 30.

**A. Relevant Factual and Procedural History**

After the counseled habeas petition was filed, the Respondents filed their Answer,
addressing both the issues raised in the pro se habeas petition (which had been incorporated into
the counseled petition) and the issues newly raised by counsel. The Respondents also caused the
original State Court record to be transmitted to this Court. All parties have consented to have a
Magistrate Judge exercise plenary authority to enter final judgment, ECF Nos. 3 & 23, which
was transferred to the undersigned due to the untimely death of Chief Magistrate Judge Hay to
whom it was originally assigned.

**B. AEDPA is applicable**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I,
§101 (1996) (AEDPA) which amended the standards for reviewing State court judgments in
federal habeas petitions filed under 28 U.S.C. § 2254 was effective April 24, 1996. Because
petitioner's habeas petition was filed in the year 2009, AEDPA is applicable to this case. Werts
v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the State courts have reviewed a federal issue presented to them and disposed of
the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides
the applicable deferential standards by which the federal habeas court is to review the State
courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the State court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that State court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted). The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to demonstrate that the State court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts v. Vaughn, supra.

AEDPA also permits federal habeas relief where the State court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

## C.  DISCUSSION

We will address the issues raised seriatim.  The first issue raised is: "GROUND ONE: Trial court erred in allowing the preliminary hearing transcript of a Commonwealth witness to be read to the jury in violation of the Confrontation clause of the 6th amendment of the united [sic] States as well as the Penn. Const." ECF No. 5 at 5.  The facts underlying this are that  FBI Agent Tom Carter interviewed Petitioner on May 14, 1999, at which time Petitioner made incriminating statements.  Agent Carter testified at Petitioner's counseled preliminary hearing, regarding verbal statements Petitioner had made to him during the interview.   At Petitioner's criminal trial, Agent Carter was unavailable to testify because of surgery.  Hence, the Commonwealth introduced the preliminary hearing testimony of Agent Carter by having it read to the jury.   Petitioner contends that this violated his Sixth Amendment confrontation rights because although he had an opportunity to cross examine Agent Carter at the preliminary hearing, at that time he allegedly did not have a copy of the written statement that he had also provided to Agent Carter and for that reason the testimony of Agent Carter at the preliminary hearing was, allegedly not entirely consistent with Petitioner's written statement.

The Superior Court addressed this issue as follows:

> The controlling issue is whether the [written] statement [made by Petitioner] contained vital impeachment evidence.  ***See Commonwealth v. Johnson*, 758 A.2d 166, 170-71 (Pa. Super. 2000)**.  The Court previously explained:

>> It is well established that for a statement to be used for impeachment, a statement actually must be inconsistent with, and not just different from, trial testimony.  Mere omissions from prior statements do not render prior statements inconsistent for

6

impeachment purposes.

*Id*. at 170 (citations omitted).

In this case, the omissions from the written statement do not make the written statement inconsistent for the purposes of impeachment such that it rendered the defense unable to cross-examine Agent Carter adequately. Agent Carter explained in his testimony that he first conducted an oral interview of Harrison and then completed a written statement that was reviewed, corrected and signed by Harrison. N.T., 3/21-29/03, at 519. Agent Carter testified on cross-examination [at the preliminary hearing] without reviewing the written statement, that everything Harrison told him about the Patton murder was in the written statement. *Id*. at 520. However, the written statement, in contrast to Agent Carter's preliminary hearing testimony did not indicate that: (1) the shooting was a "gang-related drive-by" shooting; (2) Harrison or the victims were gang members; (3) the vehicle was stolen for the purposes of the shooting; or (4) Harrison knew what was going to occur when he got in the vehicle. *Id.* at 412-15. After thoroughly reviewing Agent Carter's testimony from the preliminary hearing and the written statement, we conclude that the omissions from the written statement did not rise to the level of impeachment as prior inconsistent statements which would preclude the admission of Agent Carter's preliminary hearing testimony.[10]

_____
[10] Furthermore, upon review of the trial transcript in its entirety, it is clear that the defense effectively used the omissions from the written statement in its closing argument to call into question the credibility of Agent Carter, as well as Detective Foley, who participated in the interview of Harrison and who was present at the time the written statement was created.

We have recognized that the opportunity to impeach a witness is particularly important where the Commonwealth's entire case rests upon the testimony of an unavailable witness. *Johnson*, 758 A.2d at 169. However, the matter at hand is not a case where the Commonwealth's entire case rested upon the testimony of Agent Carter. Detective Foley, who was present and participated in the 1999 interview of Harrison, testified at trial to the facts that were omitted from the written statement. N.T., 3/21-29/03, at 403 - 50. Furthermore, Butler, [i.e., Petitioner's co-actor] also testified at trial to some of the facts that were omitted from the written statement. *Id.* at 208-28. Consequently, the Commonwealth's entire case did not rest upon Agent Carter's testimony. Harrison's opportunity to impeach Agent Carter does not rise to the level of

importance as it would in a case where the Commonwealth's case relied entirely upon the testimony of the unavailable witness.

ECF No. 19-7 at 11 to 13. Petitioner has not carried his burden to show that this was an unreasonable application of then extant Supreme Court precedent.

Indeed the controlling precedent at the time of the Superior Court's decision was Ohio v. Roberts, 448 U.S. 56 (1980), overruled by, Crawford v. Washington, 541 U.S. 36 (2004), which held that

when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

Id., at 66. Presently, Petitioner does not even mention Ohio v. Roberts, yet alone contend that the Superior Court's opinion was contrary to or constituted an unreasonable application thereof. For this reason alone, he fails to carry his burden to show entitlement to relief as to those claims. Downing v. Del Papa, 145 F.App'x 578, 580 (9th Cir. 2005)("Downing fails to argue how the Nevada Supreme Court's judgment resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"); Anderson v. Secretary for Dept. of Corrections, 462 F.3d 1319, 1325 (11th Cir. 2006)("Petitioner had not met his burden of showing the state courts' decisions were 'contrary to' or 'an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States.'"); Sepulveda v. U.S., 330 F.3d 55, 66 (1st Cir. 2003) (AEDPA requires state "petitioners to bear a different burden; they must demonstrate that the state court's adjudication of the claim 'resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"); Laemmle v. Michaels, Civil Action No. 08-333, 2009 WL 2602065, at * 5 (W.D.Pa. Aug. 24, 2009("Petitioner has cited no federal Supreme Court precedent nor has he even argued that such a disposition is contrary to or an unreasonable application of then extant federal Supreme Court precedent. For this reason alone, he fails to show that he merits relief under AEDPA.").

We note, in passing, that after the Superior Court rendered its decision, but before the Pennsylvania Supreme Court decided Petitioner's PAA, the United States Supreme Court overruled Ohio v. Roberts, in Crawford v. Washington. But, what was said of Petitioner concerning Ohio v. Roberts is equally applicable to Crawford, i.e., Petitioner does not even mention Crawford, yet alone argue that the State Courts' disposition was contrary to or an unreasonable application of Crawford.

However, even if Petitioner had so argued and even if we had concluded that the Superior Court's opinion constituted an unreasonable application of Ohio v. Washington and/or Crawford, we conclude that such would not be sufficient to merit habeas relief. See, e.g., Aleman v. Sternes, 320 F.3d 687 (7th Cir. 2003) where the Court explained:

> Aleman's premise is that if a state court renders a decision contrary to, or unreasonably applying, federal law, then the prisoner is entitled to a writ of habeas corpus. This is not, however, what § 2254(d) says. It begins: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court *shall not be granted* with respect to any claim that was adjudicated on the merits in State court proceedings *unless*" certain things are true. (The emphasis in this quotation is ours.) Unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law", collateral relief "shall not be granted". If the state court's opinion was unreasonable-or if the state judiciary did not address the constitutional claim, despite an opportunity to do so-then § 2254(d) no longer

applies. A prisoner still must establish an entitlement to the relief he seeks, and it is § 2254(a), not § 2254(d), that sets the standard: the court issues "a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Whether a given prisoner's custody violates the Constitution, laws, or treaties of the United States depends, first, on whether all substantive rules have been respected (the merit of the claim) and, second, on whether any error caused the custody.

Id., at 690.  That is, while establishing that the State Courts' decision was contrary to or an unreasonable application of Supreme Court precedent may be a necessary condition to obtaining federal habeas relief, it is not a sufficient condition; one also has to demonstrate that one's federal constitutional rights were violated, not just that the State Courts erred in their reasoning. This is the rule of law in the Third Circuit.  See Saranchak v. Beard, 616 F.3d 292, 309-10 (3d Cir.  2010)("He 'is not entitled to relief in the federal courts unless he can show that he was in fact denied effective assistance of counsel, not merely that the state courts' applied a different standard.").   Hence, Petitioner would then have to establish that his confrontation clause rights were actually violated, not just that the State Courts engaged in an incorrect analysis.

However, even if Petitioner could establish that his Sixth Amendment confrontation clause rights were violated by the reading to the jury in Petitioner's trial of the preliminary hearing testimony of Agent Carter, such would not necessarily entitle him to relief.  Even assuming that the reading of the preliminary hearing transcript to the jury violated Petitioner's confrontation clause rights, we conclude that the assumed error was harmless.  United States v. McClain, 377 F.3d 219, 222 (2d Cir. 2004) (noting that "[i]t is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review ... and Crawford does not suggest otherwise"); United States v. Reynolds, 171 F.App'x 961, 966

(3d Cir. 2006)("We need not determine whether Williams' testimony falls under *Crawford* because any error in admitting the testimony was harmless. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (stating that errors under the Confrontation Clause are subject to harmless error analysis); *United States, v. Al-Sadawi*, 432 F.3d 419, 426 (2d Cir.2005) (noting that *Crawford* errors are subject to harmless error analysis).").[3] Our conclusion as to harmlessness mirrors the Superior Court's analysis insofar as we note that 1) Pittsburgh Police Detective Foley testified at trial that Petitioner stated during the police interview those things which were omitted from Petitioner's written statement, and 2) Petitioner's fellow actor, Mr. Butler also testified at trial to some of the facts that were omitted from Petitioner's written statement. Hence, FBI Agent Carter's preliminary hearing testimony which was read at trial, was merely cumulative of other evidence and thus, its admission, assuming the admission to be error under either Ohio v. Roberts and/or Crawford, was, at best, harmless. Accordingly, this issue does not afford Petitioner relief, either because he has failed to show that the Superior Court's adjudication was contrary to or an unreasonable application of then extant United States Supreme Court precedent or because, the error if any in admitting Agent Carter's preliminary hearing testimony was harmless.[4]

---

[3] We note that federal habeas courts may, in the first instance, conclude that an error during the State Court proceedings was harmless even if the State Courts did not conduct an harmless error analysis. See Fry v. Pliler, 551U.S. 112 (2007).

[4] To the extent that Petitioner contends the admission of Agent Carter's preliminary hearing testimony at trial violated his Pennsylvania State Constitutional rights, such simply does not merit federal habeas relief. Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991)("Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural

(continued...)

The next issue is: "GROUND TWO: Trial court erred in failing to suppress Appellant's admission in violation of the Fifth and Sixth Amendments of the United States Constitution as well as Article 1, § 9 of the Pennsylvania Constitution." ECF No. 5 at 6. We take this issue raised by Petitioner in his pro se habeas petition to be substantially the same as the issue as raised by counsel in the counseled petition, i.e., "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS PETITIONER'S PRE-TRIAL STATEMENT WHERE THE SAME WAS MADE WITHOUT COUNSEL PRESENT AND WAS NOT VOLUNTARY IN NATURE BUT RATHER THE RESULT OF COERCIVE POLICE ACTIONS[,]" ECF No. 17 at 26, and we address them together as follows.

The facts underlying this claim are that on May 14, 1999, Pittsburgh Police Officer Ciganik, and FBI Agent Carter, caused Petitioner to be taken from the Allegheny County jail (where he had been brought after being arrested for a crime that was not related to the instant homicide) to a police station to interview him. Carter and Ciganik gave Petitioner his Miranda warnings and it was during this interview at the police station that Petitioner made incriminating statements which were used against him at his trial. Petitioner contends that the use of these statements violated both his Sixth Amendment right to Counsel and his Fifth Amendment rights against self incrimination and to counsel.

Petitioner bases his Sixth Amendment claim on the fact that at some time in the middle of June 1998, Petitioner was contacted by police concerning the instant homicide, and at the time Petitioner met with the police, he was accompanied by his then attorney, Mr. Janovitz. ECF No.

---

[4](...continued)
rule").

19-1 at 34.  The Superior Court described this encounter as follows:

> [d]uring the summer of 1998, both Lee and Butler gave statements to the
> police concerning the Patton murder, which implicated themselves and Harrison.
> Attorney Carl Janovitz contacted the police during this time period in order to
> negotiate an arrangement whereby Harrison would cooperate with police.  One
> meeting occurred at the Allegheny County Courthouse.   Attorney Janovitz,
> Harrison, Assistant District Attorney Daniel Konieczka ("ADA Konieczska"), and
> Detective George Cignak, [sic] of the Pittsburgh Police, were present.  The police
> did not question Harrison at this meeting.  All discussions took place between
> Attorney Janovitz and ADA Konieczka.  Despite several attempts to arrange other
> meetings, no further meetings took place.

ECF No. 19-7 at 3. Petitioner contends that from this June 1998 encounter, it is clear that

Petitioner invoked his Sixth Amendment right to counsel with respect to the homicide and so, the

police questioning that occurred on May 14, 1999,[5] some 11 months later, violated his Sixth

Amendment right to counsel.

The State trial court held that Petitioner's Sixth Amendment right to counsel was not

violated because, at the time of the May 14, 1999 interview, Petitioner had not been formally

charged with the homicide at issue now.  ECF No. 19-2.  This is an undoubtedly correct analysis

of federal law.  United States v. Gouveia, 467 U.S. 180, 187 (1984);  Matteo v. Superintendent,

---

[5]  There is quite a bit of confusion concerning the date that the police interviewed
Petitioner at the police station and obtained the  statement from Petitioner implicating himself in
the instant homicide.  See, e.g., ECF No. 17 at ¶ 4 (counseled habeas petition erroneously
recounting Petitioner was arrested on the unrelated charges on May 14, 199**8** rather than on May
14, 199**9**); Id., at 28 (again repeating that on May 14, 1998 Petitioner was arrested on the
unrelated charges and that he made an inculpatory statement regarding the instant homicide on
that date); ECF No. 19-2 at 31 n.1 (trial court opinion recounting that Petitioner had made his
inculpatory statement concerning this homicide on May 14, 199**8** rather than on May 14, 199**9**).
This Court is satisfied that the arrest on unrelated charges and the interview of Petitioner
conducted at the police station and Petitioner's inculpatory statement all occurred on May 14,
1999, roughly one month prior to Petitioner being charged and arrested on the instant homicide.
See State Court Record ("SCR"), Transcript 3/21/00 - 3/29/00, Suppression Hearing at pp. 6 to 7;
lines 14 to 16; SCR, Affidavit of Probable Cause, received by Coroner on May 18, 1999,
recounting date of Petitioner's interview and inculpatory statements as being May 14, 1999.

SCI Albion, 171 F.3d 877, 892 (3d Cir. 1999)("the Sixth Amendment right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant.")(some internal quotations omitted). Hence, Petitioner, who was not formally charged with the instant homicide until June 1999, ECF No. 19 at 1, possessed no Sixth Amendment right to counsel with respect to the instant homicide on May 14, 1999 when he was interviewed and made inculpatory statements.

In the direct appeal, the Superior Court noted that Petitioner did not challenge the trial court's finding of no violation of his Sixth Amendment right to counsel in connection with the May 14, 1999 interview. ECF No. 19-7 at 6 n.6. To the extent that Petitioner did not raise this challenge in his direct appeal to the Superior Court, we find, as an alternative reason for denying relief on this claim, that Petitioner procedurally defaulted this Sixth Amendment right to counsel claim for not raising it on direct appeal. Hence, either because it is meritless or because it is procedurally defaulted, Petitioner's Sixth Amendment right to counsel claim fails.

Next, we address Petitioner's claimed denial of his Fifth Amendment rights. Petitioner argues, in his counseled petition, that the "statements obtained by Pittsburgh Police Homicide Detective Thomas Foley during an interview of Michael Harrison, conducted without the presence of counsel or notification of his prior counsel [presumably, Attorney Janovitz] in connection with the within homicide or his then existing counsel in connection with the unrelated charges pending against him, were violative of his right to counsel and were not voluntary in nature but rather the result of coercive police action." ECF No. 18 at 28.

The State trial court held a suppression hearing and determined that Petitioner's factual contentions with respect to what transpired during the interview were unbelievable and instead,

14

the suppression court credited the police recitation of the events. SCR, Transcript, Vol. 1 at 98, lines 8 to 15; at 103, lines 15 to 24. Specifically, the suppression/trial court found that "As to the Fifth Amendment, the Court found no indication that the defendant invoked his right to counsel. It was specifically found that the defendant knowingly, intelligently and voluntarily waived his rights to remain silent and to counsel." ECF No. 19-2 at 34. Petitioner has not carried his burden to show that these credibility determinations constituted unreasonable determination of the facts.

The Superior Court addressed this issue by noting first that Petitioner did not challenge the suppression court's finding that Petitioner knowingly waived his right to counsel and to remain silent. ECF No. 19-7 at 8 n.8. The Superior Court also addressed Petitioner's argument that he had first invoked his Fifth Amendment right to counsel during the June 1998 negotiations which occurred between Attorney Janovitz and the District Attorney, and that thereafter the police were barred from interrogating Petitioner except in the presence of his counsel. The Superior Court reasoned that even if Petitioner had invoked his Fifth Amendment right to counsel in June 1998, because the extended period of time between his putative invocation of his Fifth Amendment right to counsel at that time and the May 14, 1999 custodial interrogation of Petitioner by the police at the police station, there was no violation of Petitioner's Fifth Amendment right to counsel or to remain silent so long as Petitioner validly waived his Fifth Amendment rights during the custodial interrogation on May 14, 1999, which the suppression/trial court found he had done.[6] ECF No. 19-7 at 7 to 8.

_____

[6] The Superior Court also noted that Petitioner did not argue in his appeal that he did not effectively waive his right to counsel after being given his Miranda warnings on May 14, 1999.

(continued...)

Petitioner has utterly failed to show that the State Courts' adjudication of his Fifth Amendment claims was contrary to or an unreasonable application of Supreme Court precedent. In fact, the State Courts' adjudication was even prescient. See, e.g., Maryland v. Shatzer, __ U.S. __, 130 S.Ct. 1213 (Feb. 24, 2010)(holding that the so-called *Edwards* rule, under which a suspect who has invoked his right to the presence of counsel during custodial interrogation is not subject to further interrogation until either counsel has been made available or the suspect himself further initiates exchanges with the police, does not apply if a break in custody lasting 14 days has occurred). Nor, has Petitioner shown that the State suppression/trial Court's finding that Petitioner knowingly, and voluntarily waived his Miranda rights on May 14, 1999 was an unreasonable application of *Miranda*. Hence, these claims do not merit habeas relief.

The next issue raise is:

GROUND THREE: The 6/6/98 audio-taped interview of co-defendant kenneth [sic] Lee by Pittsburgh Police officer George Ciganik and FBI agent Tom Carter in Santa Rosa, Ca[.] constitutes after discovered evidence that would have change[d] the outcome of appellant's trial.

ECF No. 5 at 8. We construe this issue to be the same as the issue raised in the counseled petition, which alleged:

III. THE PCRA COURT AND PENNSYLVANIA SUPERIOR COURT ERRED IN HOLDING THAT THE JUNE 6, 1998 AUTO [sic, should be "audio"] TAPED INTERVIEW OF CO-DEFENDANT KENNETH LEE BY PITTSBURGH POLICE OFFICER GEORGE CIGANIK AND FBI AGENT TOM CARTER IN SANTA ROSA, CALIFORNIA DID NOT CONSTITUTE AFTER DISCOVERED EVIDENCE DEPRIVED THE PETITIONER OF A

---

[6](...continued)
ECF No. 19-7 at 8 n.8. To the extent that Petitioner failed to argue before the Superior Court that he did not validly waive his Miranda rights on May 14, 1999, any argument raised in the habeas proceedings herein that he did not validly waive his Miranda rights on May 14, 1999 is procedurally defaulted and cannot now afford him relief.

MEANINGFUL EXERCISE OF HIS RIGHT TO CONFRONT WITNESSES
AGAINST HIM IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO
CONFRONTATION AND HIS FIFTH AND FOURTEENTH AMENDMENT
RIGHTS TO DUE PROCESS.

ECF No. 17 at 30.  Thus, we address these issues together.

The facts underlying this claim are that the June 1998 interview of Petitioner's co-actor,

Kenneth Lee, was taped albeit without the knowledge of Officer Ciganik or Agent Carter, and

that tape recording allegedly reveals overreaching by Police Officer George Ciganik and FBI

Agent Tom Carter in that they allegedly suggested answers to Kenneth Lee.  See, e.g., ECF No.

17 at 31 to 32.  This tape was not discovered until after Petitioner's trial was completed.

Petitioner sought to obtain a new trial based on this so called newly discovered evidence

claiming that the "police engaged in a pattern of misconduct throughout the investigation and

prosecution of Petitioner and his co-defendants." ECF No. 17 at 32, ¶ 103.  Petitioner argues

essentially, that if the tape had been played at his trial or suppression hearing, the outcome of

those proceedings would have been different because a critical piece of evidence was FBI Agent

Carter's preliminary hearing testimony wherein he recounted Petitioner's inculpatory statements

that were not also included in Petitioner's written statement.  Petitioner essentially contends that

if the suppression court  and/or the jury had heard this tape they would have found the testimony

of FBI Agent Carter unbelievable and, by inference, they would also have found unbelievable the

testimony of Pittsburgh Police Detective Foley (whose testimony at Petitioner's trial substantially

mirrored that of FBI Agent Carter's preliminary hearing testimony which was read at Petitioner's

trial).  Moreover, Petitioner claims that the absence of this tape at trial denied him of his Sixth

Amendment right to confront the witness against him because without this tape being present at

the preliminary hearing, Petitioner did not have a full and fair opportunity to cross examine

Agent Carter and so the use of the transcript of the preliminary hearing testimony lacked the

requisite indicia of reliability so as to be admissible at Petitioner's trial. ECF No. 17, at 32, ¶ 106.

This issue was raised for the first time in the PCRA petition and the Superior Court

addressed this issue as follows:

> In this case, Harrison is not entitled to relief because he has failed to
> establish that the Lee tape contains new exculpatory information. Rather,
> Harrison argues only that the Lee tape "supports" his theories advanced at trial
> that (1) Officer Ciganik authored Butler's [i.e., Petitioner's co-actor] written
> statement[2] and (2) the police engaged in misconduct. Accordingly, the Lee tape
> was cumulative of other evidence. For this reason, Harrison is not entitled to
> relief on this claim.
>
> _____
> [2] Butler's 1988 [sic, should be 1998] statement accused Harrison of being the
> shooter [rather than the driver].

ECF No. 22-2 at 6.

We searched in vain for an explicit argument by Petitioner either in the counseled petition

or in the pro se petition, that the Superior Court's disposition of this claim was contrary to or an

unreasonable application of then extant United States Supreme Court precedent. Again, for this

reason alone, Petitioner fails to carry his burden of demonstrating entitlement to habeas relief.

Downing v. Del Papa, supra.; Anderson v. Secretary for Dept. of Corrections, surpa.; Sepulveda

v. U.S. supra.; Laemmle v. Michaels, supra. ("Petitioner has cited no federal Supreme Court

precedent nor has he even argued that such a disposition is contrary to or an unreasonable

application of then extant federal Supreme Court precedent. For this reason alone, he fails to

show that he merits relief under AEDPA.").

In the alternative, we find this claim does not afford Petitioner a basis for relief because even assuming that it was error to not grant a new trial in order to permit this taped evidence to be introduced, such error was harmless. We find the above passage from the Superior Court concluding that the tape was merely cumulative of other evidence of alleged police misconduct and of the claim that Officer Ciganik was the one who provided the language to Butler for Butler's written account of the homicide supported by the record. In making this determination we find that the Superior Court implicitly held that the unavailability of the tape or the denial of a new trial based on the tape was, at most, harmless error because the tape was merely cumulative of other evidence. We agree with this implicit holding of the Superior Court and, in conducting our own harmless error analysis *de novo*, we too conclude that the tape was merely cumulative and so its exclusion was harmless error at most. United States v. McClain, 377 F.3d at 222 (noting that "[i]t is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review ... and *Crawford* does not suggest otherwise"), *opinion supplemented by*, 108 F.App'x 670 (2d Cir. 2004); United States v. Reynolds, at, 966 ("We need not determine whether Williams' testimony falls under *Crawford* because any error in admitting the testimony was harmless."). See also Washington v. Recuenco, 548 U.S. 212, 218-19 (2006)("We have repeatedly recognized that the commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal. Instead, 'most constitutional errors can be harmless.' '[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.' Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal. In such cases, the error necessarily

19

render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.")(citations and some internal quotation marks omitted, footnote omitted). Accordingly, either because Petitioner failed to carry his burden under AEDPA as to this issue or because the lack of this taped evidence at trial or at the suppression hearing was, at most, harmless error, this issue does not afford Petitioner relief.

Next we consider Petitioner's claims of ineffective assistance of counsel raised in Grounds Four, Five Six and Seven of his pro se petition.

The State Courts addressed these issues of ineffectiveness under Pennsylvania law's three pronged test for ineffectiveness announced in Commonwealth v. Pierce, 786 A.2d 203 (Pa. 2001), *abrogated on other grounds by*, Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002). See, e.g., ECF No. 22-2 at 7. The Pennsylvania Supreme Court has developed an ineffective assistance standard that requires a petitioner to demonstrate that (1) the underlying claim is of arguable merit, (2) counsel had no reasonable basis for the act or omission in question, and (3) but for counsel's act or omission, there is a reasonable probability that the outcome of the proceedings would have been different. See Commonwealth v. Douglas, 645 A.2d 226, 230-31 (Pa. 1994); Commonwealth v. Pierce, 527 A.2d at 975.

This Pennsylvania standard has been found to be materially identical to the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), Werts, 228 F.3d at 203. The Third Circuit Court has ruled that this standard is not "contrary to" Strickland, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under

Strickland." Werts. 228 F.3d at 204. Because the Superior Court decided Petitioner's claims of ineffective assistance of counsel under the standards of Pierce and those standards are essentially the same as the Strickland standard, this court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the State Court's adjudication of the federal claim resulted in a decision that was contrary to Supreme Court precedents or an unreasonable application of federal law. Pursuant to the holding of Werts, Petitioner is barred from arguing that the Superior Court's decision applying the Pierce standard is contrary to the standard announced in Strickland.

Petitioner could argue the second sense of "contrary to," i.e., the Superior Court reached a different result from that of the federal Supreme Court on a set of materially indistinguishable facts. However, Petitioner has not argued and does not point to any federal Supreme Court decision in existence at the time that the Superior Court rendered its decision in this case that has a set of facts that are materially indistinguishable from Petitioner's case where the outcome was different from the outcome reached by the Superior Court herein. Williams, 529 U.S. at 412 (analyzing whether a state court decision is "contrary to" Supreme Court precedent requires analysis of the "holdings as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision."). Accordingly, Petitioner has not shown that the Superior Court's decision in this case was contrary to clearly established federal law as determined by the United States Supreme Court, in either of the two senses of "contrary to."

Thus, the burden remains on the Petitioner to demonstrate that the Superior Court's decision was an unreasonable application of federal law. Petitioner has not carried this burden. He never explicitly argues that the State Courts' adjudication of his claims was contrary to or an

unreasonable application of any particular extant United States Supreme Court precedent. Hence, he fails to carry his burden to prove entitlement to relief on the claims of trial counsel's ineffectiveness.

Nor do we find that the Superior Court's adjudication of his ineffectiveness claims constitutes a decision that was contrary to or an unreasonable application of any United States Supreme Court precedent or an unreasonable determination of the facts. See ECF No. 22-2 at 6 to 14 (Superior Court PCRA appeal opinion addressing Petitioner's multiple claims of ineffectiveness).[7]

The petitioner's final issue is:

I. PETITIONER WAS DENIED HIS RIGHT TO PROCEED PRO SE WHEN THE SUPERIOR COURT OF PENNSYLVANIA FAILED TO CONSIDER HIS PRO SE BRIEF AND ONLY CONSIDERED THE BRIEF FILED BY DISCHARGED COUNSEL [during the PCRA appeal].

---

[7] Petitioner raised the issue of trial counsel's ineffectiveness for failing to call character witnesses. The Superior Court held that Petitioner failed to show that his trial counsel was aware of the existence of such character witnesses. ECF No. 22-2 at 14. Petitioner contended in his pro se brief to the Superior Court, that his "[c]ounsel knew or should have known about the [character] witnesses in this matter." ECF No. 21-5 at 29. Moreover, Petitioner purportedly provided affidavits from those character witnesses. ECF No. 21-5 at 30. Petitioner does not say in his brief to the Superior Court how his counsel knew about the witnesses. Nor does he say how his counsel should have known about the existence of such witnesses. Nevertheless, even if we accept for present purposes that counsel knew or should have known about the existence of such character witnesses, Petitioner has not established the ineffectiveness of his trial counsel. His trial counsel may well have had a strategic reason for not presenting such character evidence as it would have opened the door to the Commonwealth introducing evidence of Petitioner's other crimes, which otherwise would have been inadmissible. See, e.g., ECF No. 19 at 71 to 72. Because it is Petitioner's burden to prove ineffectiveness and he has not shown that his counsel had an unreasonable basis for his actions in not calling character witnesses, Petitioner has failed to carry his burden to show ineffective assistance. In the alternative, and even giving him the benefit of *de novo* review of this issue, he has failed to show prejudice. It does not appear that there is any reasonable probability that the outcome of his trial would have been different had character evidence been introduced.

ECF No. 17 at 22. The facts underlying this claim are fairly self evident. Petitioner's PCRA counsel was permitted to withdraw and a new attorney was appointed to represent Petitioner on appeal to the Superior Court. ECF No. 19 at 9. The new attorney filed an appellate brief raising the same issues as were raised in the amended PCRA petition but adding one additional claim of ineffectiveness to Issue 4 above, namely, that "[p]ast counsel rendered prejudicially ineffective assistance by . . . failing to present character evidence to rebut the introduction of gang references by the Commonwealth." ECF No. 21-1 at 2.

Petitioner, apparently unhappy with the brief filed by his appellate attorney, sought leave to proceed pro se on appeal. The Superior Court remanded the case to the PCRA trial court to conduct a hearing on Petitioner's desire to waive his State created right to counsel. The PCRA trial Court found Petitioner knowingly and intelligently waived his State created right to counsel on appeal and permitted counsel to withdraw, and permitted Petitioner to proceed pro se on appeal, and petitioner submitted a pro se brief. Before this Court, Petitioner contends, in his counseled habeas petition, that the Superior Court addressed only issues raised in the counseled brief and did not address issues raised in the pro se brief, thereby denying Petitioner his right to proceed pro se on appeal in the PCRA proceedings.

There are two difficulties with this claim. First and foremost, this claim affords him no relief because the rule is that errors in the course of a State's post conviction process simply are not cognizable in a federal habeas petition. Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation.

23

. . . Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.'"); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir.), cert. denied, Johnson v. Monroe, 522 U.S. 1003 (1997); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir.1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotation marks omitted); Roe v. Baker, 316 F.3d 557, 571 (6th Cir. 2002) ("relief may not be granted to a habeas petitioner for alleged deficiencies in a state's post-conviction procedure"); Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989); Hopkinson v. Shillinger, 866 F.2d 1185, 1219-20 (10th Cir. 1989), on reh'g, 888 F.2d 1286 (1989), overruling on other grounds recognized by Davis v. Maynard, 911 F.2d 415, 417 (10th Cir. 1990); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987). Contra Dickerson v. Walsh, 750 F.2d 150, 153 (1st Cir. 1984).

Second, Petitioner possessed no federal constitutional right to proceed pro se on appeal in the State post conviction proceedings. See Martinez v. Court of Appeal of California, Fourth Appellate Dist., 528 U.S. 152, 163 (2000)("we conclude that neither the holding nor the reasoning in *Faretta* requires California to recognize a constitutional right to self-representation on direct appeal from a criminal conviction"). Even if Petitioner had possessed a State-law right to proceed pro se on appeal, the violation of State law rights does not generally provide for relief in federal habeas proceedings. Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991)("Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of

non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule"). Petitioner has alleged nothing to take his case out of the general rule. Accordingly, this issue does not provide Petitioner relief.

As none of the issues raised affords Petitioner relief, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

ORDER

AND NOW, this 4th day of November, 2010, for the reasons set forth in the above Memorandum, the petition of Michael Harrison for a writ of habeas corpus is dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is denied.


s/Robert C. Mitchell
U.S. Magistrate Judge